IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SAM ROMEY, et al., )
)
                  Plaintiffs, )
)
vs. )
)
UNITED STATES OF AMERICA, et al., )
) No. 5:20-cv-0014-HRH
                  Defendants. )
_____)

O R D E R

State Defendants' Motion to Dismiss;
Motion to Exclude

Defendants the State of Alaska and the Alaska Mental Health Trust Authority (referred to collectively as the State defendants) move to dismiss the claims asserted against them in plaintiffs' amended complaint.[1] Plaintiffs Sam Romey, Historic Wolf Creek Boatworks, and Wolf Creek Boatworks oppose the motion to dismiss.[2] The State defendants also move to exclude an affidavit, and seven of the eight exhibits attached to it, which was

---

[1]Docket No. 67.

[2]Docket No. 72.

offered by plaintiffs in support of their opposition.[3] The motion to exclude is opposed.[4] Oral argument was not requested on either motion and is not deemed necessary.

Background

"Romey is the President and controlling Director of Historic Wolf Creek[,]" which is "located on the Tongass National Forest and State of Alaska tidelands near The Organized Village of Kassan on Prince of Wales Island in Alaska."[5] Plaintiffs allege that "Wolf Creek has been operating on its Prince of Wales parcel of the Tongass National Forest and State of Alaska Tidelands under a conditional use permit . . . continuously since 1939."[6]

Plaintiffs allege that Wolf Creek's conditional use permit was to expire at the end of 2015 and that Romey began working with the U.S. Forest Service in 2013 to renew the permit.[7] Plaintiffs allege that Romey never received any notice that his application for a new conditional use permit was denied but that in late 2020, he received notices to quit.[8] Plaintiffs allege that Romey was given notices to quit because the Forest Service did a land

---

[3]Docket No. 79.

[4]Docket No. 82.

[5]Amended Complaint at 2, ¶¶ 1, 3, Docket No. 56.

[6]Id. at 2, ¶ 4.

[7]Id. at 3-5, ¶¶ 6-20.

[8]Id. at 6-7, ¶¶ 32, 34.

swap with the Alaska Mental Health Trust Authority ("AMHTA") that included the land on which Wolf Creek Boatworks is located.[9]

"In 1956 the United States Congress passed the Alaska Mental Health Enabling Act . . . , which . . . granted the Territory of Alaska one million acres of federal land to be held in public trust to help effectuate the creation and operation of mental health care facilities in Alaska." Weiss v. State, 939 P.2d 380, 382 (Alaska 1997). These lands (or substitute lands) make up the corpus of the Mental Health Trust. Southeast Alaska Conservation Council, Inc. v. Dep't of Natural Resources, 470 P.3d 129, 132 (Alaska 2020). AMHTA was established in 1991 to act as trustee for the Mental Health Trust. Id. AMHTA is "a public corporation of the state within the Department of Revenue." AS 47.30.011. Its purpose is "to ensure an integrated comprehensive mental health program and to administer the office of the long term care ombudsman established in AS 47.62.010." Id. Funds for this integrated mental health program come from the state's general fund and the Mental Health Trust. AMHTA is governed by a board of trustees, who are "appointed by the governor and confirmed by the legislature." AS 47.30.016(a)-(b). "The Department of Natural Resources (DNR) was tasked with the actual management of Trust lands, and it created the [Trust] Land Office as a special unit to handle that duty." West v. Alaska Mental Health Trust Authority, 467 P.3d 1064, 1066 (Alaska 2020).

---

[9]Id. at 5, ¶ 21.

Plaintiffs allege that

> [o]n August 26, 2021, Mental Health Trust received patent title to the disputed land at issue here, except as follows:
>
>> THE GRANT OF THE ABOVE DESCRIBED LANDS IS SUBJECT TO VALID EXISTING RIGHTS THEREIN, reservations, rights of way, or other encumbrances of third parties in, to or on the Federal lands as of the date of enactment of the Alaska Mental Health Trust Land Exchange Act of 2017.[10]

Plaintiffs allege that this "language mirrors § 4(c) of the Alaska Mental Health Trust Land Exchange Act of 2017. . . ."[11] Plaintiffs allege that Section 4(c) provides:

> VALID EXISTING RIGHTS – The conveyance under subsection (a) shall be subject to any valid existing rights, reservations, rights-of-way, or other encumbrances of third parties in, to, or on the Federal land and the non Federal land as of the date of enactment of this Act.[12]

Plaintiffs allege that as of May 7, 2017, the date on which the Land Exchange Act was signed into law, "Historic Wolf Creek Boatworks, and its sole owner and President Sam Romey had valid existing rights to the Historic Wolf Creek Boatworks property."[13] Plaintiffs allege that "[t]hese rights include . . . adjudication of Mr. Romey's still pending application

---

[10]Amended Complaint at 8, ¶ 46, Docket No. 56.

[11]Id. at 8, ¶ 47.

[12]Id. at 9, ¶ 47.

[13]Id. at 9, ¶ 49.

-4-

for a Wolf Creek Boatworks special use permit[,]" and "pending applications for permits with the DNR and the Federal Energy Regulatory Commission. . . ."[14]

Plaintiffs allege that the "Mental Health Trust had drawn or received a map excising Historic Wolf Creek land from the land exchange act."[15] Plaintiffs further allege that "[d]espite drawing this map, to date, [the] Mental Health [Trust] has not recognized the [p]laintiff[s'] valid existing rights to the property."[16]

Plaintiff Historic Wolf Creek Boatworks commenced this action on October 13, 2020, with the filing of an APA complaint against the United States, the Department of Agriculture, and several Forest Service employees.[17] The Historic Wolf Creek Boatworks sought to have the notices to quit set aside and to have the court compel the Forest Service to consider its application for a special use permit. The federal defendants moved to dismiss the complaint, and that motion was eventually denied as moot because Historic Wolf Creek Boatworks had filed an amended complaint.[18]

The amended complaint added plaintiffs as well as the State defendants to this action. In the amended complaint, plaintiffs continue to assert APA claims against the federal

---

[14]Id. at 9, ¶ 50.

[15]Id. at 10, ¶ 51.

[16]Id. at 10, ¶ 52.

[17]Docket No. 1.

[18]Docket No. 61.

defendants, but plaintiffs have not clearly set out the claims being asserted against the State defendants. Rather, plaintiffs only allege that the State defendants' failure to recognize their valid existing rights "has created a land dispute regarding the parcel that requires the [c]ourt's intervention."[19] And, plaintiffs request that the court "compel the US Forest Service and the Mental Health Trust and the State of Alaska to issue a conditional use permit or in the alternative, invalidate the Land Exchange that occurred on August 26, 2021 until the Forest Service complies with the Administrative Procedure Act regarding Mr. Romey's property."[20]

The State defendants now move to dismiss any claims asserted against them in the amended complaint.

Discussion

The State defendants first move to dismiss plaintiffs' claims against them on Eleventh Amendment grounds. "In the Ninth Circuit, [i]t is not entirely clear whether an Eleventh Amendment challenge should be analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." Denis v. Ige, 538 F. Supp. 3d 1063, 1071 n.8 (D. Hawai'i 2021) (citation omitted). But, because the State defendants are making a facial, not a factual, jurisdictional challenge, "whether the court examines Eleventh Amendment

---

[19]Amended Complaint at 10, ¶ 53, Docket No. 56.

[20]Id. at 11.

immunity under Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim makes no difference, as those standards are essentially the same for purposes of this motion." Id. at 1072 n.8 (citation omitted). In a facial Rule 12(b)(1) attack, the moving party "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In both instances, the court may only consider the "allegations in the complaint[.]" Savage v. Glendale Union High School, Dist. No. 205, Maricopa County, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003); Friedman v. AARP, Inc., 855 F.3d 1047, 1051 (9th Cir. 2017). The court "assumes the facts alleged in the complaint to be true and construe[s] them in the light most favorable to the nonmoving party." Denis, 538 F. Supp. 3d at 1071. "However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss." Id. at 1072.

"Under the Eleventh Amendment, a state is immune from suit under state or federal law by private parties in federal court absent a valid abrogation of that immunity or an express waiver by the state." Hibbs v. Dep't of Human Resources, 273 F.3d 844, 850 (9th Cir. 2001) (citation omitted). Eleventh Amendment immunity also applies to "an arm of the

state, its instrumentalities, or its agencies." Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995) (citation omitted).

The State defendants argue that the State is immune from suit because there is nothing to suggest that the State has waived its Eleventh Amendment immunity nor is there anything to suggest that Congress has abrogated the State's immunity for claims related to the land swap.[21] The State defendants point out that the only two statutes referred to in plaintiffs' amended complaint are the Administrative Procedures Act and the Land Exchange Act, and they argue that nothing in either statute indicates that Congress intended to abrogate the State's Eleventh Amendment immunity.

Plaintiffs, however, argue that Congress abrogated the State's Eleventh Amendment immunity in the Land Exchange Act.[22] "[T]o abrogate immunity, Congress must unequivocally express that purpose." Deschutes River Alliance v. Portland General Electric Co., 1 F.4th 1153, 1159 (9th Cir. 2021). Plaintiffs argue that the intent to abrogate can be found in the "existing rights provision" in the Act. That provision reads:

> [t]he conveyances under subsection (a) shall be subject to any valid existing rights, reservations, rights-of-way, or other encumbrances of third parties in, to, or on the Federal land and the non-Federal land as of the date of enactment of this Act.

---

[21] The State makes similar arguments about the Trust Land Office ("TLO"), but the TLO is not a named defendant in this case. The question of whether the TLO is entitled to Eleventh Amendment immunity is not before the court.

[22] Although plaintiffs only raised this argument in connection with AMHTA, if the Land Exchange Act abrogated Eleventh Amendment immunity, it would have abrogated that immunity for the State as well as for any arms of the State.

-8-

Pub. L. 115-31, May 5, 2017, 131 Stat 135. Plaintiffs argue that this provision ensures that private rights that existed in 2017 on both federal and state land were retained.

The "existing rights provision" in the Land Exchange Act does not contain a "clear legislative statement" that Congress intended to abrogate the State's immunity. Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 55 (1996) (citation omitted). All the existing rights provision does is state that any land transferred to AMHTA is subject to existing rights, including existing federal rights. If "[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment[,]" id. (citation omitted), then a mere mention of Federal rights in a statute is also not sufficient.

Because there has been no waiver or abrogation, the State is entitled to Eleventh Amendment immunity. Plaintiffs' claims against the State are dismissed.

As for AMHTA, the State defendants argue that it is entitled to Eleventh Amendment immunity because it is an arm of the State. "Under the 'arm of the state' doctrine, a state agent or agency is immune from suit under the Eleventh Amendment because the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit. . . . " Durning v. Citibank, N.A., 950 F.2d 1419, 1423 (9th Cir. 1991) (citation omitted). The court applies the five-part Mitchell test to determine whether an entity is an arm of the state:

> "[1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental

-9-

> functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity."

Crowe v. Oregon State Bar, 989 F.3d 714, 731 (9th Cir. 2021) (quoting Mitchell v. L.A. Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988)). "'To determine these factors, the court looks to the way state law treats the entity.'" Id. (quoting Mitchell, 861 F.2d at 201). AMHTA "'bear[s] the burden of proving the facts that establish its immunity under the Eleventh Amendment.'" Id. (quoting ITSI T.V. Prods., Inc. v. Agric. Ass'ns, 3 F.3d 1289, 1292 (9th Cir. 1993)).

The State defendants concede that factors 3 and 4 weigh against immunity as AMHTA can sue or be sued, AS 47.30.011(c)(2), and "has authority to take title to and convey and encumber property."[23] The focus here is on factors 1, 2, and 5.

The first Mitchell factor is whether a money judgment against AMHTA would be satisfied out of state funds. In the Ninth Circuit, "'the source from which the sums sought by the plaintiff must come is the most important single factor in determining whether the Eleventh Amendment bars federal jurisdiction.'" Id. (quoting Durning, 950 F.2d at 1424).

The first factor weighs in favor of immunity. First and foremost, AMHTA is funded, in part, by funds from the State's general fund. Although, as plaintiffs point out, AMHTA

---

[23] Memorandum of Law in Support of Motion to Dismiss at 14, attached to Motion to Dismiss, Docket No. 67.

-10-

funds are kept in a separate account,[24] AS 37.14.036(a), a portion of the money in that account comes from the State's general fund. This means that the source of any sums sought by plaintiffs is, in part, the State. In addition, the statutes governing AMHTA do not expressly provide that the State would not be liable for a judgment against AMHTA. While the statutes also do not expressly obligate the State to pay a judgment against AMHTA, if a judgment against AMHTA were to render the Mental Health Trust insolvent, the State would likely continue to fund the mental health services being provided by AMHTA. In other words, a judgment against AMHTA could impact the State treasury. Secondly, it is worth noting that "the lands . . . overseen by AMHTA are actually land . . . provided to the Territory of Alaska through the Alaska Mental Health Enabling Act[,]" which means that the trust lands "ultimately belong to the State of Alaska. . . ."[25] Contrary to plaintiffs' contention, AMHTA did not receive the trust land directly from the federal government prior to statehood as AMHTA was not created until 1991. Rather, the trust land was originally conveyed to the Territory of Alaska.

The second Mitchell factor also weighs in favor of immunity. This factor requires the court to consider whether AMHTA performs a central governmental function. The Alaska

---

[24]This account is called the mental health trust settlement account and it "consists of (1) fees, charges, income earned on assets, and other money received by the trust that is not attributable to the principal of the trust under AS 37.14.031(d); and (2) money deposited in the account in accordance with appropriations or allocations made by law." AS 37.14.036.

[25]Memorandum of Law in Support of Motion to Dismiss at 13, attached to Motion to Dismiss, Docket No. 67.

-11-

Case 5:20-cv-00014-HRH   Document 85   Filed 05/18/22   Page 11 of 15

Constitution provides that "[t]he legislature shall provide for the promotion and protection of public health." AK Const. Article 7, § 4. AMHTA is responsible for providing a broad range of mental health services to persons with a wide array of mental health issues. AS 47.30.056. These services are without a doubt part of the State's public health duties. Thus, AMHTA performs a central governmental function.

Plaintiffs' argument to the contrary is unavailing. Plaintiffs argue that central governmental functions are those that are controlled and managed by state government, and they argue that the mental health services that AMHTA provides are not controlled and/or managed by the State because AMHTA is controlled and managed by its board. But, the board members are appointed by the Governor and confirmed by the legislature. AS 47.30.016(b). And it is the Governor who can remove a board member for cause. AS 47.30.021(c). While AMHTA may be controlled by its Board, the State controls who is on the board.

The fifth <u>Mitchell</u> factor requires the court to consider the corporate status of AMHTA. AMHTA is "a public corporation of the state within the Department of Revenue." AS 47.30.011(a). While AMHTA is a "public" corporation, which might suggest that this factor weighs against immunity, AMHTA is a public corporation <u>within the Department of Revenue</u>. This means that AMHTA is actually part of the Department of Revenue. In addition, as set out above, the State maintains some control over AMHTA. The fifth factor thus weighs in favor of immunity.

-12-

While factors 3 and 4 weigh against immunity, these factors are "entitled to less weight than the first two factors." Belanger v. Madera Unified School Dist., 963 F.2d 248, 254 (9th Cir. 1992). And the first two factors, as well as factor 5, weigh in favor of immunity. Under the circumstances of this case, these three factors are sufficient to support AMHTA's claim of immunity. The court concludes that AMHTA is an arm of the state and entitled to Eleventh Amendment immunity.

To the extent there is any room for doubt about that conclusion, Alaska Cargo Transport, Inc. v. Alaska Railroad Corporation, 5 F.3d 378 (9th Cir. 1993), tips the immunity question in AMHTA's favor. The Alaska Railroad Corporation ("ARRC") "is an Alaska corporation which provides rail service to the cities of Anchorage, Fairbanks, Seward, and Whittier, Alaska." Id. at 379. The issue before Ninth Circuit was whether the ARRC "was an instrumentality of the State of Alaska[.]" Id. The court concluded that the ARRC was an arm of the state even though its governing statutes expressly provided that it, rather than the State, would be liable for a judgment against it, it could sue or be sued, and it could take title to property in its own name. Id. at 380-82. The court reached its conclusion that the ARRC was an arm of the state, in large part, because the ARRC provided an essential governmental function and the statutory framework placed many restrictions on the ARRC. The court explained that "[t]here can be no argument but that ARRC is the [s]tate-owned railroad upon which many communities and individuals in Alaska are wholly or substantially dependent . . . for freight and passenger service, service that is an essential government function." Id.

-13-

at 380 (citations omitted).  The court also explained that "state law places many restrictions on" the ARRC "(from the state governor's exclusive power to appoint members to its board, to limitations on land use and line extension, to forbidding it to issue bonds without legislative approval, to forbidding it to issue shares of stock, pay dividends, make private distributions of assets, make loans to board members or employees, or engage in business for private benefit[.])." Id. at 381 (internal citations omitted).  Ultimately, the court found that although the ARRC would be responsible for a money judgment against it, such a judgment "likely would impact Alaska's treasury because of the state's strong interest in keeping ARRC operationally and fiscally sound." Id. at 382.

Much the same is true of AMHTA.  Although it can sue and be sued and can take property in its own name, AMHTA provides a central governmental function, the provision of mental health services, which the State would have to provide should AMHTA not be financially able to do so.  And, as is the case with the ARRC, the State places many restrictions on AMHTA.  In short, if the ARRC is an arm of the State, then surely AMHTA is as well.

Because AMHTA is an arm of the state, it is entitled to Eleventh Amendment immunity.  Plaintiffs' claims against AMHTA are dismissed.

Because the instant motion is being decided on Eleventh Amendment grounds, the court need not consider the State defendants' alternative argument that plaintiffs failed to state plausible claims.  It was in connection with the plausibility arguments that plaintiffs

-14-

offered the affidavit of Romey, to which eight exhibits were attached. The State defendants moved to exclude Romey's affidavit and seven of the eight exhibits. This motion is denied as moot because the court did not need to consider Romey's affidavit or any of the attached exhibits.

## Conclusion

The State defendants' motion to dismiss[26] is granted. Plaintiffs' amended complaint against the State defendants is dismissed without prejudice.

The State defendants' motion to exclude[27] is denied as moot.

DATED at Anchorage, Alaska, this 18th day of May, 2022.

/s/ H. Russel Holland<br>United States District Judge

---

[26]Docket No. 67.

[27]Docket No. 79.