IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SAM ROMEY, et al., )
)
               Plaintiffs, )
)
vs. )
)
UNITED STATES OF AMERICA, et al., )
) No. 5:20-cv-0014-HRH
               Defendants. )
_____)

O R D E R

Federal Defendants' Motion to Dismiss

The Federal defendants (the United States, the Secretary of Agriculture, and five Forest Service employees) move to dismiss plaintiffs' amended complaint.[1] This motion is opposed by plaintiffs Sam Romey, Historic Wolf Creek Boatworks, and Wolf Creek Boatworks.[2] Oral argument was not requested and is not deemed necessary.

Background

"Historic Wolf Creek Boatworks . . . is an Alaskan non-profit corporation that has buildings and a business located on the Tongass National Forest and State of Alaska

---

[1]Docket No. 68.

[2]Docket No. 75.

-1-

tidelands near the Organized Village of Kasaan on Prince of Wales Island in Alaska."[3] Approximately one-third of the Boatworks shop building plus other outbuildings sit on land that was Forest Service land and the other two-thirds of the shop building sits on land owned by the State of Alaska.[4] Historic Wolf Creek Boatworks was formed "on April 17, 2020. Before this, it was a proprietorship, Wolf Creek Boatworks[,] run by Sam Romey[.]"[5] "Romey is the President and controlling Director of Historic Wolf Creek. . . ."[6]

Plaintiffs allege that the Boatworks has been "operating . . . under a conditional use permit . . . continuously since 1939."[7] The most recent special use permit was issued to Romey in November 2010.[8] This permit was "issued for the purpose of operating and maintaining a commercial boat repair facility."[9] The permit had an expiration date of December 31, 2015.[10] The permit provided that it was "not renewable" and that "[p]rior to

---

[3]Amended Complaint at 2, ¶ 1, Docket No. 56.

[4]Admin. Rec. at 1181.

[5]Amended Complaint at 2, ¶ 2, Docket No. 56.

[6]Id. at 2, ¶ 3.

[7]Id. at 2, ¶ 4.

[8]Admin. Rec. at 468.

[9]Admin. Rec. at 470.

[10]Admin. Rec. at 470.

expiration of this permit, the holder may apply for a new permit that would renew the use and occupancy authorized by this permit."[11]

Plaintiffs allege that Romey began working on renewing his special use permit in 2013.[12] Plaintiffs allege that Romey submitted an operating plan to the Forest Service in 2014 and that in 2015, he continued "to follow up on his attempts to renew the Boatworks' conditional use permit."[13] More specifically, in January 2015, Romey emailed Melanie Slayton, a Forest Service employee, and in response, she advised Romey that she would "consider your email your written request to renew your permit. . . ."[14] The Federal defendants contend that Romey's "renewal request was never completed nor approved by the Forest Service" before the 2010 special use permit "expired on December 31, 2015."[15] Plaintiffs, however, allege that Romey "submitted . . . everything that the Forest Service asked of him."[16]

Also in 2015, the Forest Service and the Alaska Mental Health Trust Authority ("AMHTA") began discussing a potential land exchange that would include the federal land

---

[11]Admin. Rec. at 470.

[12]Amended Complaint at 3, ¶ 6, Docket No. 56.

[13]Id. at 3, ¶ ¶ 9-10.

[14]Admin. Rec. at 516.

[15]Memorandum in Support of Federal Defendants' Motion to Dismiss Amended Complaint at 4, Docket No. 69.

[16]Amended Complaint at 6, ¶ 31, Docket No. 56.

-3-

on which the Boatworks sits. In the Initial Agreement to Initiate, it was noted that the Boatworks had a special use permit through December 31, 2015.[17] In August 2016, there was some discussion about whether AMHTA might "survey out the parcel [where the Boatworks is located] and re-convey [it] to Wolf Creek Boatworks."[18]

In May 2017, the Alaska Mental Health Trust Land Exchange Act of 2017 was signed into law. The Act contains an "existing rights" provision that reads:

> [t]he conveyances under subsection (a) shall be subject to any valid existing rights, reservations, rights-of-way, or other encumbrances of third parties in, to, or on the Federal land and the non-Federal land as of the date of enactment of this Act.

Pub. L. 115-31, May 5, 2017, 131 Stat 135.

Plaintiffs allege that in 2018, Romey sent additional information to the Forest Service in his continued attempts to obtain a special use permit.[19] Plaintiffs allege that to date, "Romey has not received any notice that his application" for a special use permit "has been denied[.]"[20] The Federal defendants, however, contend that Romey was given notice in a December 16, 2019, letter that his permit application had been denied. In the December 16, 2019, letter, the Forest Service gave Romey "formal" notice that his "personal and business

---

[17]Admin. Rec. at 544.

[18]Admin. Rec. at 591.

[19]Amended Complaint at 5, ¶ 20, Docket No. 56.

[20]Id. at 6, ¶ 32.

-4-

property must be removed" because the land was to be conveyed to AMHTA.[21] Romey was advised that

> [b]ecause the [Forest Service] is required to convey the land encumbered only with valid existing rights and because you do not hold a current permit, the [Forest Service] does not have the discretion to issue a new special use permit for the purposes of authorizing your continued use of the land prior to the finalization of the land transfer with the AMHTA.[22]

Romey was given until December 15, 2020 to remove his "privately owned[] buildings, personal and business property and fixtures. . . ."[23]

On August 14, 2020, the Forest Service again advised Romey that he had "to remove the boathouse and shop building, in addition to" the other structures and improvements on the land in question.[24] Plaintiffs, however, allege that as of May 7, 2017, the date on which the Exchange Act was signed into law, "Historic Wolf Creek Boatworks, and its sole owner and President Sam Romey had valid existing rights to the Historic Wolf Creek Boatworks property."[25] Plaintiffs allege that "[t]hese rights include . . . adjudication of Mr. Romey's still pending application for a Wolf Creek Boatworks special use permit[,]" and "some water

---

[21]Exhibit 8 at 1, Amended Complaint, Docket No. 56.

[22]Id.

[23]Id. at 2.

[24]Exhibit 9 at 2, Amended Complaint, Docket No. 56.

[25]Amended Complaint at 9, ¶ 49, Docket No. 56.

rights to the property as he had pending applications for permits with the DNR and the Federal Energy Regulatory Commission. . . ."[26]

On October 13, 2020, plaintiff Historic Wolf Creek Boatworks commenced this action with the filing of an APA complaint against the United States, the Department of Agriculture, and several Forest Service employees.[27] The defendants moved to dismiss the complaint, and that motion was eventually denied as moot because Historic Wolf Creek Boatworks had filed an amended complaint.[28]

On August 26, 2021, AMHTA received patent title to the disputed land at issue here, except as follows:

> THE GRANT OF THE ABOVE DESCRIBED LANDS IS SUBJECT TO valid existing rights therein, reservations, rights of way, or other encumbrances of third parties in, to or on the Federal land as of the date of enactment of the Alaska Mental Health Trust Land Exchange Act of 2017.[[29]]

Plaintiffs' amended complaint was filed on January 21, 2022. In their amended complaint, plaintiffs assert an unreasonable delay claim under Section 706(1) of the APA. Plaintiffs allege that the "Forest Service's delay of more than seven years on whether or not

---

[26]Id. at 9, ¶ 50.

[27]Docket No. 1.

[28]Docket No. 61.

[29]Exhibit 10 at 2, Amended Complaint, Docket No. 56.

-6-

Case 5:20-cv-00014-HRH   Document 86   Filed 06/27/22   Page 6 of 18

to grant Wolf Creek a new conditional use permit is unreasonable."[30] Plaintiffs also assert an arbitrary and capricious claim under Section 706(2) of the APA. They allege that the "Forest Service's decision to evict Wolf Creek from the land and declare its tenancy invalid and its conditional use permit lapsed without considering the application for extension that has been pending for seven years is arbitrary and capricious."[31] Plaintiffs allege that they were injured by the Forest Service's inaction "because they are left trying to work with the Mental Health Trust without a valid conditional use permit and have had difficulties obtaining and perfecting their application for water rights, Federal Energy Regulatory Commission energy rights and tidelands lease rights."[32] Plaintiffs also allege that "this lack of conditional use permit and related threats of eviction has left [them] in a state of limbo where it is has been difficult to provide maintenance or engage in new building projects on the site."[33] And, plaintiffs allege that "Mr. Romey has had problems renewing his related tidelands lease with the DNR for the property buildings and dock work adjacent to the Conditional Use Permit property."[34] Plaintiffs request that the court "compel the US Forest Service . . . to issue a conditional use permit or in the alternative, invalidate the Land

---

[30]Amended Complaint at 7, ¶ 39, Docket No. 56.

[31]Id. at 7, ¶ 40.

[32]Id. at 7-8, ¶ 42.

[33]Id. at 8, ¶ 43.

[34]Id. at 8, ¶ 44.

Exchange that occurred on August 26, 2021 until the Forest Service complies with the Administrative Procedure Act regarding Mr. Romey's property."[35]

Pursuant to Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure, the Federal defendants now move to dismiss plaintiffs' claims against them.

Discussion

The Federal defendants first move to dismiss plaintiffs' claims on standing grounds. "Because standing . . . pertain[s] to federal courts' subject matter jurisdiction," it is "properly raised in a Rule 12(b)(1) motion to dismiss." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The United States is making a factual attack here. "A 'factual' attack . . . contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). "When the defendant raises a factual attack, the plaintiff must support h[is] jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context." Id. (internal citation omitted). "The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." Id. "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." Id. at 1121-22.

---

[35]Id. at 11.

"To have standing, the party invoking federal jurisdiction must allege 'a case or controversy within the meaning of Art. III of the Constitution.'" Meland v. Weber, 2 F.4th 838, 843–44 (9th Cir. 2021) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 297 (1979)). "To meet the 'irreducible constitutional minimum' of standing, a plaintiff must have (1) suffered an 'injury in fact,' (2) that is 'fairly traceable' to the challenged conduct, and (3) will be redressed by a favorable decision." Magadia v. Wal-Mart Associates, Inc., 999 F.3d 668, 673–74 (9th Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought[.]" Inland Empire Waterkeeper v. Corona Clay Co., 17 F.4th 825, 832 (9th Cir. 2021) (citation omitted).

"Our Article III standing inquiry . . . begins . . . with 'injury in fact, the first and foremost of standing's three elements.'" Perry v. Newsom, 18 F.4th 622, 631 (9th Cir. 2021) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)). "To show an injury in fact, the plaintiff 'must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Magadia, 999 F.3d at 674 (quoting Spokeo, 578 U.S. at 339).

Both of plaintiffs' claims are based on allegations that they were injured because the Forest Service did not timely act on Romey's 2015 request for a special use permit.[36] The Federal defendants argue, however, that plaintiffs cannot establish an injury-in-fact because

---

[36]Although Romey began working on obtaining the permit in 2013, the Forest Service did not consider Romey to have made a written request for a special use permit until 2015.

the Forest Service did not violate any of its regulations. In other words, the Federal defendants argue that the Forest Service acted in a timely manner when considering Romey's 2015 request for a special use permit and thus plaintiffs did not suffer any injury in connection with Romey's 2015 request.

In their amended complaint, plaintiffs allege that the Forest Service violated 36 C.F.R. § 251.54 when it failed to act on Romey's request for a special use permit.[37] Section 251.54 sets out the application requirements and procedures for a <u>new</u> special use permit, but the Federal defendants argue that Romey was not seeking a new special use permit. Rather, they contend that Romey was seeking to renew an existing special use permit. Renewals of special use permits are governed by 36 C.F.R. § 251.64.

The factual record regarding Romey's 2015 permit request is inconclusive as to whether Romey was seeking a new special use permit or a renewal of the 2010 permit. The terms "new" and "renew" were used interchangeably by the parties. For example, the 2010 permit made reference to the holder applying "for a <u>new</u> permit that would renew the use and occupancy authorized by this permit."[38] But, the Forest Service advised Romey that it was considering his email a "written request to <u>renew</u> your permit. . . ."[39] In their amended complaint, plaintiffs allege that "[o]n January 8, 2015, Mr. Romey E-mailed Ms. Slayton [at

---

[37]Amended Complaint at 6, ¶¶ 28, 30, 32, Docket No. 56.

[38]Admin. Rec. at 470 (emphasis added).

[39]Admin. Rec. at 516 (emphasis added).

the Forest Service] to follow up on his attempts to <u>renew</u> the Wolf Creek conditional use permit."[40] But in the very next paragraph, plaintiffs alleged that Romey was attempting to "secure a <u>new</u> conditional use permit."[41]

Some guidance as to which regulation should have applied to Romey's 2015 request can be found in the Forest Service Handbook. The Handbook provides that proposals involving existing uses, such as Romey's, are governed by 36 C.F.R. § 251.64.[42] The Handbook defines proposals involving existing uses to include "[p]roposals to replace an authorization that has terminated because the term of the authorization has ended, and continued use does not involve new construction or expanded use or occupancy of the National Forest System lands beyond what was previously authorized."[43] Romey's 2015 request appears to fall squarely within this definition. Thus, the court concludes that Section 251.64, the renewal regulation, applied to Romey's 2015 request for a special use permit.

Because Section 251.64 applied to Romey's 2015 request, plaintiffs can establish that they suffered an injury-in-fact. Section 251.64(b) provides that "[w]hen a special use authorization does not provide for renewal, it is discretionary with the authorized officer, upon request from the holder and prior to its expiration, whether or not the authorization shall be renewed." This regulation plainly provides that the Forest Service has to act upon a

---

[40]Amended Complaint at 3, ¶ 10, Docket No. 56 (emphasis added).

[41]Id. at 3, ¶ 11 (emphasis added).

[42]Exhibit B at 9, Defendants' Reply in Support of Motion to Dismiss, Docket No. 37.

[43]Id.

-11-

Case 5:20-cv-00014-HRH   Document 86   Filed 06/27/22   Page 11 of 18

request to renew a special use permit before the current permit expires. There is no dispute that the Forest Service did not act upon Romey's 2015 request for a special use permit prior to the expiration of the 2010 permit on December 31, 2015. That means that as of January 1, 2016, Romey had no special use permit and still did not have a permit by the May 7, 2017, date of the Exchange Act. Not having a special use permit on the 2017 date in question was an injury-in-fact. Plaintiffs have met the first element of standing.

This injury is fairly traceable to the Forest Service's conduct. Romey might have had a special use permit on May 7, 2017, but for the Forest Service's delay in considering his 2015 request for a special use permit. Plaintiffs have met the second element of standing.

The third element of Article III standing is redressability. "To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." Juliana v. United States, 947 F.3d 1159, 1170 (9th Cir. 2020). Plaintiffs must "demonstrate that a decision in [their] favor 'will produce tangible, meaningful results in the real world[.]'" Pritikin v. Dep't of Energy, 254 F.3d 791, 799 (9th Cir. 2001) (quoting Common Cause v. Dep't of Energy, 702 F.2d 245, 254 (D.C. Cir. 1983)).

In their amended complaint, plaintiffs seek the same two remedies for each of their claims. Plaintiffs request that the court "compel the US Forest Service . . . to issue a conditional use permit or in the alternative, invalidate the Land Exchange that occurred on August 26, 2021 until the Forest Service complies with the Administrative Procedure Act

regarding Mr. Romey's property."[44]  The court considers these remedies in reverse order.

Plaintiffs ask the court to invalidate the land exchange that has already taken place, but they have not offered any authority, nor is the court aware of any such authority, that would permit the court to invalidate the land exchange.  In fact, there is Ninth Circuit authority that supports the conclusion that the court cannot invalidate the land exchange as a remedy for plaintiffs' injury-in-fact.

Tinian Women Association v. United States Department of the Navy, 976 F.3d 832, 835 (9th Cir. 2020), involved "the Navy's decision to relocate troops from Okinawa, Japan to Guam, pursuant to treaty obligations with Japan."  TWA claimed "that the Navy failed to consider stationing alternatives beyond Guam and the CNMI for Marines relocating out of Okinawa."  Id. at 839.  Because TWA had alleged a procedural injury, in order to establish redressability, it "'need[ed] to show only that the relief requested—that the agency follow the correct procedures—may influence the agency's ultimate decision of whether to take or refrain from taking a certain action.'"  Id. at 840 (quoting Salmon Spawning & Recovery All. v. Gutierrez, 545 F.3d 1220, 1226–27 (9th Cir. 2008)).  The Ninth Circuit found that TWA could not meet this burden because if the court were to order the Navy to consider stationing alternatives, it would be "order[ing] the Navy to modify or set aside the Agreement between the United States and Japan[,]" which the court could not do.  Id.  As the court explained, "[t]he treaty provides that the Marines 'and their approximately 9,000 dependents will

---

[44]Amended Complaint at 11, Docket No. 56.

-13-

relocate from Okinawa to Guam.' Granting the relief TWA seeks would necessarily rescind the decision to relocate the troops to Guam, resulting in an order to the executive branch to rescind or modify the agreement." Id.

Similarly here, were the court to invalidate the land exchange that has already taken place, it would be ordering the Federal defendants to ignore the Exchange Act, which required the land to be conveyed to AMHTA. This the court cannot do. The court cannot order the Federal defendants to ignore a federal statute.

Plaintiffs' injury-in fact cannot be redressed by the court invalidating the land exchange that has already taken place because the court does not have the power to award such relief. Thus, plaintiffs have not met the third element of standing as to this requested form of relief. Plaintiffs lack standing to pursue their APA claims that seek the invalidation of the land exchange that has already taken place as a remedy.

Plaintiffs also seek to have the court compel the Forest Service to issue a special use permit, but this is relief that is not within the court's power to award. "[T]he court may compel the agency to []act, but [it] cannot specify what that particular action should be." Ctr. for Biological Diversity v. Bureau of Land Management, 937 F. Supp. 2d 1140, 1161 (N.D. Cal. 2013). In other words, the court could not compel the Forest Service to take the particular action that plaintiffs are requesting, which is that it issue a special use permit to Romey.

The court could compel the Forest Service to act, but in this case, the Forest Service has already acted on Romey's 2015 request for a special use permit. Although plaintiffs

-14-

allege that "Romey has not received any notice that his application" for a special use permit "has been denied,"[45] the record is to the contrary. The December 16, 2019, letter contains a denial of Romey's 2015 request. In the December 16, 2019, letter, the Forest Service plainly told Romey that it could not issue him a special use permit because it no longer owned the land on which the Boatworks sits.

Because the Forest Service has in fact denied Romey's 2015 request for a special use permit, albeit later than it should have,[46] the court could review that decision and set it aside if it found that the Forest Service had acted arbitrarily and capriciously in denying Romey's request. But, in doing so, the court could not tell the Forest Service to back-date any new decision on Romey's 2015 request, which is the relief plaintiffs want. Plaintiffs want the court to order the Forest Service to provide Romey with a special use permit that was in effect as of May 7, 2017. But, plaintiffs have cited to no authority by which the Forest Service can issue a retroactive special use permit. That means that any special use permit that the Forest Service might issue now would not change the fact that Romey's 2010 permit expired almost two years before the effective date of the Exchange Act, or that Romey had no special use permit as of May 7, 2017.

Plaintiffs argue that they are asking the court to enforce their valid existing rights to the Boatworks property, which is something they contend the court can do. But this

---

[45]Amended Complaint at 6, ¶ 32, Docket No. 56.

[46]Romey could have sought to compel the Forest Service to act on his 2015 request prior to the December 16, 2019 denial.

argument assumes that plaintiffs have a valid existing property right, which they do not have, at least not in connection with Romey's special use permit.

A special use permit does not create any interest in the land. The special use permit regulations define a "permit" as a "special use authorization which provides permission, without conveying an interest in land, to occupy and use National Forest System land or facilities for specified purposes, and which is both revocable and terminable." 36 C.F.R. § 251.51. These provisions were made part of Romey's 2010 special use permit, which expressly stated that it was "revocable and terminable," was "not real property [and did] not convey any interest in real property," and was "not a contract or a lease, but rather a federal license."[47] But even if a special use permit could be considered a valid existing right for purposes of the Exchange Act, Romey's 2010 special use permit had expired on December 31, 2015, which left Romey without a valid existing right on May 7, 2017.

Plaintiffs' reliance on Aleknagik Natives Ltd. v. United States, 806 F.2d 924 (9th Cir. 1986), does not help them. Aleknagik Natives involved one of "ANCSA's key provisions[,]" which "withdrew public lands surrounding native villages from all public appropriations, except for lands 'subject to valid existing rights.'" Id. at 925-26 (quoting 43 U.S.C. § 1610(a)(1)). "In administering ANCSA, the Secretary [of the Interior] was required to determine whether townsite land that had been segregated, but not yet subdivided and distributed, was within this exception for 'valid existing rights.'" Id. at 926. The Ninth

---

[47]Admin. Rec. at 472.

Circuit "conclud[ed] that if the occupants had filed their petition to segregate, i.e. if the occupants had begun the first step of the process, before ANCSA's enactment, the land came within the existing rights exception." Id. The Ninth Circuit explained

> that "valid existing rights" does not necessarily mean vested rights. Under [the Alaska Native Townsite Act] before its repeal, a municipality, and all individuals who had occupied specific lots within the subdivision limits, had a legitimate claim for municipal control of any unoccupied lots, control which would enhance the corporate sense of community and the powers of the municipality to control its immediate surroundings. It is rational to conclude that when the Congress repealed the law and enacted a savings clause for "existing rights," that this claim would be preserved. The term "valid existing rights" does not necessarily mean present possessory rights, or even a future interest in the property law sense of existing ownership that becomes possessory upon the expiration of earlier estates. Legitimate expectations may be recognized as valid existing rights, especially where the expectancy is created by the government in the first instance.

Id. at 926-27. Even if Romey had been led to believe in 2015 that a new special use permit would be issued, that would not have created a legitimate expectation as that term is used in Aleknagik Natives. The "legitimate expectation" in Aleknagik Natives was created by a federal statute. But, here, the renewal of a special use permit is discretionary and even if a permit is renewed, the permit remains revocable at any time. Romey could not have had a "legitimate expectation" that a special use permit would be issued simply because he attempted to renew his permit in 2015. See American Nuclear Corp. v. Andrus, 434 F. Supp. 1035, 1037 (D.C. Wyo. 1977) (filing of application for a prospecting permit under the Mineral Leasing Act does not create any property or legal rights).

-17-

In sum, plaintiffs' injury-in fact cannot be redressed by the court compelling the Forest Service to issue a special use permit to Romey. At best, the court could set aside the Forest Service's denial of Romey's 2015 request for a special use permit, but any new decision by the Forest Service would plainly come beyond the effective date of the Exchange Act for purposes of a valid existing right decision. Moreover, the Forest Service could not issue a permit to use land which it does not own. Thus, plaintiffs have not met the third element of standing as to their requested relief in the form of compelling the Forest Service to issue a special use permit to Romey. Plaintiffs lack standing to pursue their APA claims which seek, as a remedy, an order compelling the Forest Service to issue Romey a special use permit.

Because plaintiffs lack standing to pursue either of their APA claims, these claims are dismissed. Because plaintiffs' claims are subject to dismissal on standing grounds, the court need not consider the Federal defendants' alternative arguments that plaintiffs' claims are moot and that plaintiffs' claims are subject to dismissal pursuant to Rule 12(b)(6).

## Conclusion

The Federal defendants' motion to dismiss is granted. Plaintiffs' claims against the Federal defendants are dismissed without leave to amend. Any amendment would be futile.

DATED at Anchorage, Alaska, this 27th day of June, 2022.

/s/ H. Russel Holland
United States District Judge